IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOROTHY O'SHEA**<br><br>**Plaintiff**<br><br>v.<br><br>**INTERBORO SCHOOL DISTRICT, et al.**<br><br>**Defendants** | **CIVIL ACTION**<br><br>**NO. 13-cv-06305** |

**MEMORANDUM OF LAW RE: DEFENDANTS' MOTION TO DISMISS**

**Baylson, J.**                                                                                                  **April 28, 2014**

**I.      Introduction**

Plaintiff Dorothy O'Shea brings this employment retaliation suit against Interboro School District and the District's Superintendent, Nancy Hacker (collectively, Defendants), alleging that Defendants violated Title V of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203 (Count I), and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Count II), by retaliating against O'Shea for making complaints and participating in investigations concerning the inadequacy of special needs services within the school district.[1]  The Amended Complaint avers that, after almost three years of working in a hostile work environment, O'Shea felt compelled to terminate her employment with the school district on June 30, 2012.  She initiated this suit on October 29, 2013.

Defendants now move to dismiss the Amended Complaint for failure to state a claim. ECF 7.

---

[1] Although Count I in the Amended Complaint reads "Retaliation in Violation of Title II, Itel III [sic] and Title V of the ADA," the Court reads Count I as bringing a Title V claim for retaliation against conduct protected under Title II and Title III.  *See* 42 U.S.C. § 12203(c) ("The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section with respect to subchapter I, subchapter II and subchapter III of this chapter, respectively.").

1

**II.     Facts**[2]

The Amended Complaint alleges in over 140 paragraphs a litany of protected activity and retaliatory responses from February 2010 to June 2012. Because a great deal of this conduct is time barred, as discussed *infra*, the Court will recount the allegations in the Amended Complaint in summary fashion.

O'Shea was hired in September of 2009 as the Director of Student Services and Special Education for the Interboro School District. Amended Complaint, ECF 5 ¶ 9. She was responsible for budgeting district-wide special education services and overseeing the implementation of the district's special education plan. ECF 5 ¶ 9. As part of her oversight duties, O'Shea was responsible for supervising the Individual Education Programs ("IEPs") and the Special Education Program ("SAP"). ECF 5 ¶ 12. She also oversaw various staff and offices, including the district's Special Education Supervisor, school psychologists, and the Office of Pupil Services. ECF 5 ¶ 13. Additionally, O'Shea participated in administrative and organizational meetings regarding district-wide policies to locate, identify, evaluate, and educate children with disabilities. ECF 5 ¶ 11.

Beginning in February 2010, O'Shea brought numerous complaints to Superintendent Hacker, and other school officials, about various special education programs within the district and their failure to comply with federal law. ECF 5 ¶ 14. After making these complaints, the Superintendent and key administrators began to harass O'Shea, subject her to wrongful discipline, and interfere with her job duties. These actions eventually resulted in O'Shea suffering de facto demotions, loss of pay, and eventually constructive discharge. ECF 5 ¶ 16.

---

[2] These factual allegations are taken from the Amended Complaint. They are presumed true for the purpose of evaluating Defendants' Motion to Dismiss. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

For example, O'Shea complained that the manner in which the district evaluated SAP students did not comply with the Individuals with Disabilities Education Act and § 504 of the Rehabilitation Act.  ECF 5 ¶ 15.  After making this complaint, she was excluded from e-mails and administrative meetings discussing special education services offered by the district.  ECF 5 ¶ 17.  In another example, on April 6, 2010, O'Shea informed Superintendent Hacker that the Pennsylvania Department of Education had concluded that the district's Drop Back in Alternative Education Program ("DBIA") did not comply with state alternative education standards.  ECF 5 ¶ 19.  When O'Shea presented Superintendent Hacker with this information, Hacker verbally reprimanded O'Shea for complaining to the state about the DBIA program.  ECF 5 ¶ 20.

Following these and other complaints about the operation of various special education programs, in June 2010 O'Shea received a negative job evaluation from Superintendent Hacker.  ECF 5 ¶ 23.  O'Shea contends that, but for her complaints, she would not have received a negative evaluation.  As a result of the evaluation, O'Shea was not eligible for an annual salary increase.  After receiving the evaluation, in the spring of 2010, O'Shea experienced ongoing hostility and harassment from Superintendent Hacker, Business Director Ken King, and Interboro High School Principal Paul Gibson.  ECF 5 ¶ 25.

On July 29, 2010, O'Shea filed thirteen specific charges of discrimination by Defendants with the United States Department of Education's Office of Civil Rights ("OCR") on behalf of disabled students in the school district.  She also filed a charge of retaliatory conduct on her own behalf for her opposition to the school district's violations of federal law.  ECF 5 ¶ 30.  Shortly

after filing these charges,[3] Superintendent Hacker removed one of O'Shea's core job duties: direct supervision of the district's special education staff. ECF 5 ¶ 33.

During the 2010-2011 school year, O'Shea made several other complaints about the inadequacies of special education programs in the district. ECF 5 ¶¶ 63-65. In addition to other retaliatory acts, O'Shea was verbally reprimanded by Superintendent Hacker and Principal Gibson for making these complaints. ECF 5 ¶¶ 63, 70. On November 4, 2010, O'Shea filed additional complaints of retaliation with OCR. ECF 5 ¶ 69.

Several instances of retaliatory conduct occurred through the summer of 2011, which culminated in O'Shea receiving another negative job evaluation. ECF 5-1 ¶¶ 71-93. In September 2011, O'Shea was interviewed by OCR staff in response to her complaints. ECF 5-1 ¶ 90. Superintendent Hacker was aware of O'Shea's participation in these interviews. A day after the interviews occurred, Superintendent Hacker threatened O'Shea with disciplinary action regarding her complaints about the special education programs in the district. ECF 5-1 ¶ 90.

In November 2011, O'Shea recommended to the School Board not to renew a contract with a provider of mental health services. ECF 5-1 ¶ 96. When Principal Gibson was made aware of O'Shea's recommendation, he informed her via e-mail that he was going to advise the parents of special education students that they would not receive sufficient mental health services. ECF 5-1 ¶ 97. Gibson's e-mail included the names of several students attending Interboro High School. ECF 5-1 ¶ 98. O'Shea replied to this e-mail and copied Superintendent Hacker and members of the School Board to her response. ECF 5-1 ¶ 98. As a result of her e-mail, O'Shea was made to attend a disciplinary meetings for releasing confidential student information to individuals not employed by the Interboro School District, namely members of the School Board. ECF 5-1 ¶¶ 100. At the conclusion of the last disciplinary meeting, on

---

[3] No specific date is alleged in the Amended Complaint.

4

December 5, 2011, O'Shea was suspended for two days without pay and escorted out of the building by the Director of Human Resources in front of the entire faculty and staff. ECF 5-1 ¶¶ 98, 102. These acts of suspension and humiliation were in retaliation for her complaints and recommendations to the School Board. ECF 5-1 ¶ 103. O'Shea then filed another retaliation complaint with OCR. ECF 5-1 ¶ 105.

In April of 2012, O'Shea complained to Superintendent Hacker and the School Board that the Individual Education Plans for students receiving "instruction in the home" denied them equal protection. ECF 5-1 ¶ 107.

On April 27, 2012, OCR denied all of O'Shea's retaliation claims alleged in her December 2011 complaint. ECF 5-1 ¶ 108. On May 31, 2012, OCR denied all of O'Shea's retaliation claims alleged in her July 2010 and November 2010 complaints. ECF 5-1 ¶ 110. With regards to the discrimination complaints O'Shea filed on behalf of certain students in the school district, on September 20, 2012, OCR entered into a Voluntary Resolution Agreement for three of the five allegations raised in the complaint. ECF 5-1 ¶¶ 114, 116, 119.

On June 30, 2012, O'Shea was forced to terminate her employment with the school district in light of the retaliatory and hostile work environment created by Defendants. ECF 5-1 ¶ 128. On October 29, 2013, O'Shea instituted this suit.

## III.   Legal Standard

When deciding a a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir.2008) (internal quotations omitted). To survive a 12(b)(6) motion, the complaint's "factual

5

allegations must be enough to raise a right to relief above the speculative level." *Id.* at 234. When a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (reaffirming rationale set forth in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (internal quotation marks and citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

## IV. Contentions of the Parties

Defendants offer two main arguments to dismiss O'Shea's complaint.[4] First, they argue that any allegation of retaliation occurring before October 29, 2011 is time barred by a two-year statute of limitations. Second, they contend that O'Shea's remaining allegations fail to state a causal connection between a protected activity and an adverse employment action.

O'Shea responds that the statute of limitations has not run on the events occurring before October 29, 2011 because she filed complaints with OCR in 2010 and 2011 and did not receive final decisions on them until June 2013. ECF 9-1 at 11-12. The argument implicit in this statement is that the statute of limitations should be tolled because O'Shea timely pursued administrative remedies.

---

[4] Defendants' exhaustion argument is without merit. O'Shea was not required to file an administrative complaint before bringing suit in federal court. *See McInerney v. Rensselaer Polytechnic Inst.,* 505 F.3d 135, 138 (2d Cir. 2007) ("Whether an ADA claim must first be presented to an administrative agency depends on which precise title of the ADA the claim invokes."); *Freed v. Consolidated Rail Corp.,* 201 F.3d 188, 190 (3d Cir. 2000) ("[S]ection 504 plaintiffs may proceed directly to court without pursuing administrative remedies."); *Smith v. City of Philadelphia*, 345 F. Supp. 2d 482, 486-87 (E.D. Pa. 2004) (Title II does not require exhaustion); *Hill v. Park*, Case No. 03-cv-4677, 2004 WL 180044, at *3 (E.D. Pa. Jan. 27, 2004) (Title III does not require exhaustion); *Burkhart v. Widener Univ., Inc.*, 70 F. App'x 52, 54 (3d Cir. 2003) (Title III does not require exhaustion).
Defendants' contention that O'Shea lacks standing to raise Title II and Title III claims is equally unavailing, for O'Shea is only bringing a Title V claim. *See supra* note 1.
Finally, because the Court concludes that O'Shea's complaint fails to state a claim on other grounds, Defendants' arguments regarding pretext, individual liability, and damages need not be addressed.

O'Shea's response to Defendants' causation argument focuses on conduct that occurred prior to October 29, 2011. ECF 9-1 at 21-23. O'Shea's briefing does not directly address causation as it relates to events that occurred after October 29, 2011.

## V.     Statute of Limitations

The statute of limitations for claims brought under the ADA and § 504 of the Rehabilitation Act is borrowed from Pennsylvania's two-year statute of limitations for personal injury claims. *See Disabled in Action of Pa. v. SEPTA*, 539 F.3d 199, 209 (3d Cir. 2008) (holding that the statute of limitations for claims under Title II of the ADA and § 504 of the Rehabilitation Act is Pennsylvania's statute of limitations for personal injury); *Burkhart v. Widener Univ., Inc.*, 70 Fed. App'x 52, 53 (3d Cir. 2003) (noting that ADA claims are governed by Pennsylvania's two-year statute of limitations for personal injury).

All the events described in the Amended Complaint prior to October 29, 2011 occurred more than two years before O'Shea instituted this suit. Accordingly, the Court will disregard these allegations unless the limitations period should be tolled or O'Shea can state a continuing violation theory.

### A.     Tolling under State Law

When borrowing a statute of limitations from the law of the forum state, courts also incorporate state tolling rules. *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 422 (3d Cir. 2005) (citing *Hardin v. Straub,* 490 U.S. 536, 539 (1989)). Pennsylvania's tolling statute permits a timely-commenced civil action or proceeding that has been terminated to be commenced anew within a year of its termination. 42 Pa. Stat. § 5535(a)(1). Assuming that O'Shea's complaints to OCR constituted a "proceeding" under the statute, she cannot avail herself of statutory tolling because the OCR "proceedings" were not terminated—they were fully adjudicated.

O'Shea can also not avail herself of Pennsylvania's equitable tolling doctrine because Defendants did not engage in fraudulent or concealing conduct that caused O'Shea to relax her vigilance in pursuing her claims. *See Molineux v. Reed*, 532 A.2d 792, 794 (Pa. 1987) ("Where, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitation." (internal quotation marks omitted)).

B.  **Tolling under Federal Law**

Although Pennsylvania's statute of limitations is applied to O'Shea's claims, "federal tolling doctrine may be applicable to determine whether . . . federal claims are timely." *Smith v. City of Philadelphia*, 345 F. Supp. 2d 482, 486 (E.D. Pa. 2004) (quoting *Lake v. Arnold,* 232 F.3d 360, 366 (3d Cir.2000)) (considering the applicability of federal equitable tolling doctrine to ADA and Rehabilitation Act claims). This doctrine will toll a statute of limitations: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1387 (3d Cir. 1994). O'Shea's circumstances do not warrant tolling under any of these prongs.

O'Shea's only argument for tolling is that she timely filed complaints with OCR. However, where a plaintiff is not required to exhaust their administrative remedies prior to bringing suit in federal court, the statute of limitations is not tolled when the plaintiff chooses to seek those optional remedies. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980) (holding a claim brought under 42 U.S.C. § 1981 was untimely and refusing to toll the statute while plaintiff pursued an internal grievance procedure); *Kalyanaram v. Am. Ass'n of Univ. Professors*

8

*at New York Inst. of Tech., Inc.*, 742 F.3d 42, 48 (2d Cir. 2014) ("Although equitable tolling of limitations periods has been recognized in other contexts where pursuing a separate administrative remedy is a precondition to filing suit, no such tolling is available where an optional, parallel avenue of relief is pursued." (citations omitted)); *Conley v. Int'l Bhd. of Elec. Workers, Local 639,* 810 F.2d 913, 915–16 (9th Cir. 1987) (holding that pursuing a claim before the National Labor Relations Board does not toll an action alleging that the union acted unfairly toward union members); *Arriaga–Zayas v. Int'l Ladies' Garment Workers' Union–Puerto Rico Council,* 835 F.2d 11, 14 (1st Cir. 1987) (noting that courts have "historically been reluctant to invoke tolling in circumstances where a claimant rides parallel horses in search of relief"); *Harris v. Alumax Mill Prods., Inc.,* 897 F.2d 400, 404 (9th Cir. 1990) (emphasizing that courts are "reluctant to invoke tolling where a plaintiff is tardy in pursuing a parallel avenue of relief"); *Pramuk v. Purdue Calumet Univ.,* Case No. 12-cv-77, 2012 WL 6552920, at *4-5 (N.D. Ind. Dec. 14, 2012) (holding that the statute of limitations was not tolled for plaintiff's Title II ADA and Rehabilitation Act claims by filing an optional complaint with OCR); *Beasley v. Ala. State Univ.*, 3 F. Supp. 2d 1325, 1343 (M.D. Ala. 1998) (holding that the statute of limitations was not tolled for plaintiff's Title IX and 42 U.S.C. § 1983 claims by filing an elective complaint with OCR).

As the cases cited *supra* note 4 indicate, neither Rehabilitation Act claims nor Title V claims arising under Title II or Title III of the ADA require exhaustion.  O'Shea's pursuit of administrative remedies with OCR was not a prerequisite to her bringing suit in federal court.  Thus, her claims are not eligible for tolling.

### C.    Continuing Violation

O'Shea's pre-October 29, 2011 claims will not be time barred if they constitute a part of a continuing violation of O'Shea's federal rights. In employment discrimination law, there are two categories of violations that are actionable: discrete acts and continuing violations. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-18 (2002) (discussing the distinction between discrete acts and continuing violations in the context of claims brought under Title VII of the Civil Rights Act of 1964).[5] A discrete retaliatory act "'occurred' on the day that it 'happened.'" *Id.* at 110. "[D]iscrete [retaliatory] acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113.

The Supreme Court has indicated that "termination, failure to promote, denial of transfer, [and] refusal to hire" are discrete acts, each constituting a "separately actionable 'unlawful employment practice.'" *Id.* at 114. The Third Circuit has indicated that wrongful suspension, wrongful discipline, and wrongful accusation also constitute discrete acts. *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006). Although not mentioned in *Morgan* or *O'Connor*, courts have also recognized wrongful demotion as a discrete act that is individually actionable. *E.g.*, *Graham v. Hoffer*, Case No. 05-cv-2679, 2006 WL 3831375, at *3 (M.D. Pa. Dec. 28, 2006).

By contrast, a continuing violation involves "acts which are not individually actionable but may be aggregated to make out a hostile work environment claim." *O'Connor*, 440 F.3d at 127. This type of violation occurs "over a series of days or perhaps years," *Morgan*, 536 U.S. at 115, and "is based on the cumulative effect of a thousand cuts, rather than on any particular

---

[5] The Court is aware that *Morgan* did not involve ADA or Rehabilitation Act claims. However, "the distinction between 'continuing violations' and 'discrete acts' is not an artifact of Title VII, but is rather a generic feature of federal employment law. Thus, in whatever statutory context the distinction may arise, *Morgan* will control." *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006).

action taken by the defendant," *O'Connor*, 440 F.3d at 128.  Although discrete acts must be raised within the applicable statute of limitations period, acts constituting a continuing violation "can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." *Id.* at 127.  However, discrete acts which are time barred "cannot be resurrected by being aggregated and labeled continuing violations." *Id.* at 129.

From what the Court can glean from the Amended Complaint, many of O'Shea's allegations describe discrete acts that occurred beyond the two-year statute of limitations.[6] These acts are therefore time barred.

This is not to say that the Amended Complaint is completely devoid of allegations that might state a continuing violation theory.  However, two reasons prevent the Court from concluding that O'Shea has adequately alleged such a theory.

First, the Amended Complaint suffers from garbled phrasing, poor organization, and a lack of clearly-stated, linear narrative. Some allegations have specific dates, others refer to months, others refer to seasons, while others still merely state that certain events occurred in the past without reference to a particular time period.  Several allegations seem to be describing the same events but offer slightly varying details, so that the reader does not know if the allegations are new events or are adding details to prior allegations.

For example, in paragraph 19 of the Amended Complaint, O'Shea alleges that on April 6, 2010 she informed Superintendent Hacker that the Pennsylvania Department of Education found that the DBIA program did not comply with "state alternative education standards or provide the disabled or thought-to-be disabled children an appropriate education." ECF 5 ¶ 19.  In paragraph

---

[6] *See, e.g.*, ECF 5 ¶ 23; ECF 5-1 ¶¶ 87-88 (Negative job evaluations constitute discrete acts of wrongful discipline); ECF 5 ¶¶ 31, 33, 61-62; ECF 5-1 ¶¶ 70, 72-74, 94-95 (Removal of job duties constitutes a discrete act of wrongful demotion); ECF 5 ¶¶ 46-47, 79 (Refusal to train constitutes a discrete act of retaliation); ECF 5 ¶¶ 31, 43; ECF 5-1 ¶¶ 70, 77-79, 90, 98, 100, 102  (Verbal reprimands and other disciplinary actions for engaging in protected activity constitute wrongful discipline).

20, O'Shea describes how she was retaliated against for making this inquiry. Then, in paragraph 21, O'Shea alleges a list of six examples of complaints which constitute protected activity under federal law. Paragraph 21(a) alleges that O'Shea complained that school administrators wrongfully encouraged students to drop out of school and enroll in a program offered by a private contractor called Alternatives Unlimited. It then alleges that Alternatives Unlimited operates the DBIA program and the Delaware County Learning Academy. Then paragraph 21(b) avers that "in early April of 2010" both of these programs were cited as non-approved providers of alternative education services by the Pennsylvania Department of Education. The Amended Complaint offers no indication that paragraph 21(b) relates to paragraph 19, though it seems to provide related, or perhaps duplicative, information.

In another example, paragraph 30 of the Amended Complaint discusses conduct that occurred in July 2010. In paragraph 36, however, the Amended Complaint jumps back two months and discusses conduct that occurred in May 2010. In yet another example, paragraphs 96-98 describe conduct that began in November 2011 and resulted in O'Shea's suspension. Paragraph 99 describes this punishment as a retaliatory act. Then paragraphs 100-102 describe a disciplinary hearing spanning from December 1 to December 5, 2011, in which O'Shea was escorted out of the building and humiliated. Paragraph 103 then characterizes these December events as a retaliatory act. The Amended Complaint does not indicate that O'Shea's suspension for her conduct in November 2011 was the consequence of her disciplinary hearing in December 2011—though this is the apparent inference. Nevertheless, the Amended Complaint characterizes these events as two acts of retaliation.

These and other allegations are scattered and disconnected. The Amended Complaint seems to omit certain details when introducing the reader to an event only to add them later on

without reference to the original, relevant allegation.  At best, the Amended Complaint does not provide a short and plain statement of the grounds entitling O'Shea to relief, as required by Rule 8 of the Federal Rules of Civil Procedure.  At worst, the phrasing of these allegations gives the reader the impression that O'Shea is "stacking" the complaint—which is to say, the organization of the allegations seems like their content is over-parsed and spread throughout the complaint to give the appearance that there is more contested conduct than may be fairly said to have occurred.  Compare J.R.R. Tolkein's single-volume novel *The Hobbit, or There and Back Again* (1937) with MGM Pictures and New Line Cinema's serialized adaptation *The Hobbit: An Unexpected Journey* (2012); *The Hobbit: The Desolation of Smaug* (2013); *The Hobbit: There and Back Again* (2014).  However it is characterized, the Amended Complaint's organization makes it nearly impossible for the reader to decipher what might constitute conduct that could be included in a continuing violation theory versus what is properly considered conduct that constitutes a discrete act.

     Second, O'Shea does not assert in the Amended Complaint or in her Motion to Dismiss briefing that she is raising a continuing violation theory.  As a result, she has not identified which allegations she believes constitute a continuing violation.  O'Shea's inclusion of a vast amount of material that is disorganized and mostly time barred prevents the Court from inferring a continuing violation theory from the face of the Amended Complaint.  Although these time-barred allegations may be relevant "as background evidence in support of a timely claim," *Morgan*, 536 U.S. at 113, they are so interspersed throughout the Amended Complaint that any continuing violation allegations are difficult to parse.  If O'Shea wishes to include these time-barred allegations, she needs to (1) clearly identify the allegations that relate to discrete acts and are not time barred; then (2) clearly identify the allegations occurring beyond the statute-of-

limitations period that comprise a continuing violation, and then (3) clearly identify the allegations within the statute-of-limitations period that comprise a continuing violation. The Court will not infer (any more than it already has) that O'Shea is making certain arguments when they have not been made by her in the first place.

If O'Shea decides to file an amended complaint, any allegations of fact she includes that occurred before October 29, 2011 must be relevant to a viable legal theory to be considered.

## VI.     Failure to State a Claim for Retaliation

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA]." 42 U.S.C. § 12203. Title II of the ADA makes it unlawful for a qualified individual with a disability to "be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title III of the ADA makes in unlawful for an individual to "be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, privileges, advantages, or accommodations of any person who owns, leases (or leases to), or operates a public accommodation." 42 U.S.C. § 12182. "[I]t is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA." *Shellenberger v. Summit Bancorp, Inc.,* 318 F.3d 183, 188 (3d Cir. 2003). It is also unlawful to retaliate against an individual "because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203.[7]

To state a claim for retaliation under the ADA, a plaintiff must allege "(1) a protected employee activity; (2) adverse action by the employer either after or contemporaneous with the

---

[7] The Rehabilitation Act covers similar activity that need not be differentiated here.

14

employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *see also Houlihan v. Sussex Technical Sch. Dist.*, 461 F. Supp. 2d 252, 257 (D. Del. 2006) (noting that "the elements required to establish a claim of retaliation under the Rehabilitation Act are the same as those required for a claim of retaliation under Title VII and the ADA"). Protected activity is not limited to the filing of formal charges; an informal protest of discriminatory employment practices is sufficient. However, the "protest, in whatever medium, must specifically relate to the protected conduct allegedly being infringed." *Hibbard v. Penn-Trafford Sch. Dist.*, Case No. 13-cv-622, 2014 WL 640253, at *16 (W.D. Pa. Feb. 19, 2014) (citing *Barber v. CSX Dist. Servs.*, 68 F.3d 694, 701 (3d Cir. 1995)).

The Amended Complaint alleges two events of retaliation that are not time barred: one involving wrongful discipline, the other involving constructive discharge.

### A.     Wrongful Discipline

O'Shea's wrongful discipline allegations concern a recommendation she made to the School Board not to renew a contract with a provider of mental health services. ECF 5-1 ¶ 96. In response to this recommendation, Principal Gibson e-mailed O'Shea threatening to notify parents that their children would not receive sufficient mental health services. ECF 5-1 ¶ 97. O'Shea then forwarded the Principal's e-mail to Superintendent Hacker and the School Board to complain about the Principal's conduct. The Principal's e-mail, however, included the names of several students. O'Shea was subsequently ordered to attend a disciplinary meeting for "releasing confidential student information to individuals not employed by the Interboro School District," where she was suspended for two days and escorted out of the building. ECF 5-1 ¶ 100.

O'Shea alleges that the suspension and removal from the building were retaliatory acts. She further alleges that, but for her complaining to the School Board about Principal Gibson's conduct, she would not have been suspended. However, O'Shea does not adequately allege that her complaint to the School Board was protected activity—for she does not allege that her complaint objected to practices prohibited by the anti-discrimination laws. To be sure, O'Shea alludes to being treated unfairly, for she states that the Principal threatened to inform parents about her recommendation even though the School Board hired a new contractor to provide mental health services. ECF 5-1 ¶ 97. But a "general complaint of unfair treatment does not translate into a charge of illegal discrimination [or retaliation]." *Barber*, 68 F.3d at 702.

Nor does O'Shea allege that her recommendation to the School Board was based on her belief that the provider was violating anti-discrimination laws. She merely alleges that the recommendation was based on "her ongoing focus to increase the quality of services provided to children with disabilities" and that the provider contract was "previously part" of the ongoing OCR retaliation and discrimination complaints referenced elsewhere in the Amended Complaint. ECF 5-1 ¶ 96. These allegations do not adequately plead protected activity. *See Barber,* 68 F.3d at 702 (holding that a complaint does not constitute protected activity where it is "just too vague" and "does not explicitly or implicitly allege that" conduct protected under the ADEA was the basis for the complaint); *Hibbard*, 2014 WL 640253, at *16 (applying *Barber* and granting defendant's motion to dismiss where plaintiff's complaint was "too vague to lead to the plausible inference that" plaintiff engaged in protected activity).[8] Although it is sufficient "for a plaintiff to demonstrate that he acted under a reasonable belief that the conduct of which he complained

---

[8] Although *Barber* and *Hibbard* involve ADEA and Title VII claims, their rulings are equally relevant to ADA claims. *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) ("Because the anti-retaliation provisions of the ADA and ADEA are nearly identical, as is the anti-retaliation provision of Title VII, we have held that precedent interpreting any one of these statutes is equally relevant to interpretation of the others.").

constituted a violation of the relevant statute," *Jackson v. Birmingham Bd. of Educ,* 544 U.S. 167, 187–188 (2005), O'Shea has failed to allege that she believed she was so acting.

### B.        Constructive Discharge

O'Shea next alleges that she was forced to terminate her employment with the school district in light of the retaliatory and hostile environment created by her employer.  ECF 5-1 ¶ 128.  In December 2011, O'Shea filed a third complaint with OCR.  ECF 5-1 ¶ 105.  In April 2012, O'Shea submitted complaints to Superintendent Hacker and the School Board about how the special education services provided to students receiving "instruction at home" were not in compliance with federal law.  ECF 5-1 ¶ 107.  In June 2012, O'Shea terminated her employment with the school district.  ECF 5-1 ¶ 128.  Defendants argue that O'Shea has failed to plead a causal connection between her termination of employment and a protected activity.

To establish causation, a plaintiff must plead facts that indicate either

(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof the plaintiff must show that from the evidence gleaned from the record as a whole the trier of the fact should infer causation.

*Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (internal quotation marks and citations omitted); *see also M.S. ex rel. Shihadeh v. Marple Newtown Sch. Dist.*, Case No. 11-cv-5857, 2012 WL 3815563, at *4 (E.D. Pa. Sept. 4, 2012) (applying these factors on a motion to dismiss).  Timing alone will be sufficient to establish causation only if it is "unusually suggestive."  In *Robinson v. City of Pittsburgh*, the Third Circuit clarified that "unusually suggestive" means causation can be established where an adverse employment action occurs very close in time to the protected activity, such as within two days.  120 F.3d 1286, 1302 (3d Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).  Absent "unusually suggestive" timing, courts look to a broader timeframe coupled

with a pattern of antagonism in the intervening period. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-21 (3d Cir. 1997); *see also Thomas v. Town of Hammonton,* 351 F.3d 108, 114 (3d Cir. 2003) ("Where 'the temporal proximity is not so close as to be unduly suggestive,' we have recognized that 'timing plus other evidence may be an appropriate test.'" (alteration omitted) (quoting *Estate of Smith v. Marasco,* 318 F.3d 497, 513 (3d Cir. 2003))).

Six months elapsed between O'Shea's December 2011 OCR complaint and employment termination. Two months elapsed between her April 2012 complaints and her employment termination. These time periods do not qualify as "unusually suggestive." *See Thomas*, 351 F.3d at 114 (noting that three weeks is not unusually suggestive). Nor do they establish causation under *Woodson*'s timing-plus-antagonism test. O'Shea does not allege any retaliatory acts or other hostile conduct by Defendants between December 2011 and her constructive discharge in June 2012. *See Connelly v. Lane Constr.*, Case No. 13-cv-1402, 2014 WL 950342, at *2 (W.D. Pa. Mar. 11, 2014) (granting in part defendant's motion to dismiss where the complaint alleged no harassing or retaliatory conduct during the intervening six-month period between plaintiff's protected activity and the adverse employment action). Because O'Shea has failed to plead a pattern of antagonism during the intervening period between her protected activity and her alleged constructive discharge, she has failed to plead causation under the test announced in *Robinson*.

Finally, given that the Amended Complaint is poorly organized and replete with time-barred conduct, the Court is unable to infer causation by considering the allegations taken as a whole. O'Shea may be able to state a claim for retaliation, but she does not to do so in the Amended Complaint.

**VII.	Conclusion**

For the foregoing reasons, the Amended Complaint is DISMISSED WITHOUT PREJUDICE.  O'Shea is granted leave to file an amended complaint that addresses the deficiencies enumerated in this opinion.  An appropriate order follows.

O:\CIVIL 13\13-6305 o'shea v. interboro sd\Memo of Law re MTD.docx