IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOROTHY O'SHEA<br><br>Plaintiff<br><br>v.<br><br>INTERBORO SCHOOL DISTRICT, et al.<br><br>Defendant | CIVIL ACTION<br><br>NO. 13-cv-06305 |

Baylson, J.                                                                             October 9, 2014

**MEMORANDUM OF LAW RE: DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**I.      Introduction**

This is an employment discrimination case alleging retaliation in violation of Title V of the Americans with Disabilities Act ("ADA"),[1] 42 U.S.C. § 12203 (Count I), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Count II). The Court previously dismissed most of Plaintiff's claims as time-barred, but granted leave to amend to plead a continuing violation and correct other deficiencies with respect to two timely claims. Defendants Interboro School District ("the School District") and former School District Superintendent Dr. Nancy Hacker ("Superintendent Hacker") now move to dismiss Plaintiff's Second Amended Complaint.

**II.     Background and Procedural History**

Because the facts of the Second Amended Complaint do not deviate in any material way from those of the Amended Complaint, the Court will not describe them in detail. Plaintiff Dorothy O'Shea ("O'Shea") was the Director of Student Services and Special Education for the

---

[1] Count I of the Second Amended Complaint alleges "retaliation in violation of Title II, Title II, and Title V of the ADA." ECF 16 ¶¶ 160–75. Defendants argue that O'Shea does not have standing to raise Title II and Title III claims. ECF 17-1 at 8–9. The Court previously rejected this argument because it interpreted the Amended Complaint to bring only a Title V claim based on complaints about potential violations of Title II and Title III. ECF 14 at 6 n.4. The counts of the Second Amended Complaint are identical, so the Court will do the same here.

1

School District.  She claims that over more than two years, Defendants engaged in a series of retaliatory actions in response to her complaints about the failure of the School District's special education programs to comply with the ADA and/or Rehabilitation Act.  This retaliatory conduct led her eventually to resign from her job in June 2012.

Plaintiff filed this lawsuit on October 29, 2013, and amended her initial complaint on January 21, 2014.  ECF 1, 5.  By Order of April 28, 2014, the Court dismissed O'Shea's Amended Complaint.  ECF 15.  In its accompanying Memorandum of Law (the "Dismissal Memorandum"), the Court instructed Plaintiff to "clearly identify" in an amended pleading what events prior to October 29, 2011, if any, were part of a continuing violation.  ECF 14 at 13–14.  On May 12, 2014, O'Shea filed a Second Amended Complaint, which Defendants again moved to dismiss on May 28, 2014.  ECF 16, 17.

## III.   Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).  To survive a 12(b)(6) motion, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* at 234.  When a complaint contains well pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (reaffirming rationale set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 678 (internal quotation marks omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

IV. **Analysis**

The Second Amended Complaint has improved upon the Amended Complaint by presenting a more or less chronological narrative. Although O'Shea has not followed the Court's instruction to specify clearly what conduct forms a continuing violation, her factual allegations are sufficient to allow the Court to infer a continuing violation. The Second Amended Complaint has also corrected the pleading deficiencies in O'Shea's two timely claims for wrongful discipline and constructive discharge.

A. **Statute of Limitations**

Pennsylvania's two-year statute of limitations for personal injury actions applies to both O'Shea's ADA and § 504 claims.[2] *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008). In evaluating when the limitations period begins to run, the Supreme Court has distinguished between discrete acts, whose limitations periods begin to run on the day they occur, and continuing violations, which are timely so long as "an act contributing to the

---

[2] O'Shea has for the first time argued that the four-year federal "catch-all" limitations period of 28 U.S.C. § 1658 should apply to her claims. ECF 18 at 8–11. The Supreme Court has clarified that an action "'aris[es] under an Act of Congress enacted' after December 1, 1990—and therefore is governed by § 1658's four-year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). In *Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transportation Authority*, the Third Circuit held that because Title II of the ADA and § 504 of the Rehabilitation Act were enacted prior to 1990, the four-year limitations period of § 1658 did not apply. *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008).

Title V of the ADA – the enactment that "makes possible" O'Shea's ADA retaliation claim – likewise became law before December 1, 1990. Americans with Disabilities Act of 1990, Pub. L. No. 101-336, § 503, 104 Stat. 327, 370 (enacted July 26, 1990). Although O'Shea points to the ADA Amendments Act of 2008 (the "ADAAA") and related changes to federal regulations regarding OCR investigations of Title II claims as bases for her claim, they did not "make possible" a right of action for retaliation against individuals who report ADA violations. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553. Nor are federal regulations "Act[s] of Congress," as the language of § 1658 requires. 28 U.S.C. § 1658 (2012).

claim occurs within the filing period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).

In determining whether a claim is a discrete act versus a continuing violation, discrete acts "are easy to identify" and constitute "separate actionable 'unlawful employment practices.'" *Id.* at 114. In contrast, continuing violations involve a series of "acts which are not individually actionable but may be aggregated to make out a hostile work environment claim." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006). The Third Circuit has recognized a cause of action where retaliation manifests as a hostile work environment.[3] *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006) (recognizing "retaliatory harassment" cause of action under Title VII), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see Houlihan v. Sussex Technical Sch. Dist.*, 461 F. Supp. 2d 252, 257 (D. Del. 2006) (explaining that "the elements required to establish a claim of retaliation under the Rehabilitation Act are the same as those required for a claim of retaliation under Title VII and the ADA"). In a retaliatory harassment claim, harassment that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" is sufficient to establish an adverse employment action. *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)) (internal quotation marks omitted).

In her Second Amended Complaint, O'Shea describes numerous acts that are not individually actionable, including ongoing negative comments, public humiliation, intentional prevention of O'Shea from fulfilling conditions of her performance improvement plan, and

---

[3] Defendants cite no authority supporting their argument that O'Shea's failure to label a count in her Second Amended Complaint "hostile work environment" is "improper." ECF 19 at 5. Rather, "a complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, — U.S. —, —, 131 S. Ct. 1289, 1296 (2011).

blame for failure to carry out job duties that had been transferred to other employees.[4] *E.g.*, ECF 16 ¶¶ 55–58, 70, 73–74, 78–79, 102–04, 111, 127.  Taken as true, these allegations support a plausible inference that Defendants engaged in a pattern of retaliatory conduct that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[5] *Moore*, 461 F.3d at 341.  Some of this conduct continued until O'Shea's resignation in 2012, and therefore into the limitations period.  *E.g.*, ECF 16 ¶¶ 37, 55–57, 111.

Because the Court must review the complaint in the light most favorable to the plaintiff, the Court will infer a retaliatory harassment claim from the allegations in the Second Amended Complaint.  Defendants are nevertheless welcome to renew their statute of limitations arguments at the summary judgment stage.

**B.      Wrongful Discipline**

The Court previously dismissed O'Shea's wrongful discipline claim because she did not allege that discipline she received in December 2011 for purportedly violating the School District's confidentiality policies was retaliation for complaints regarding conduct that violated, or that she believed violated, anti-discrimination laws.  ECF 14 at 16–17.  O'Shea now attaches to the Second Amended Complaint emails between her, Superintendent Hacker, and School Board members that led to this incident.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the

---

[4] Defendants argue that O'Shea's allegations of continuing conduct are conclusory.  ECF 17-1 at 12. O'Shea, however, has provided specific factual examples of ongoing retaliatory conduct in addition to her averments that Defendants' conduct was continuous.  She need not go into granular detail at this stage.  *See, e.g., Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11, 13 (3d Cir. 2009) ("Fowler is not required, at this early pleading stage, to go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations.").

[5] Defendants also argue that O'Shea has failed to plead disability, but disability is not an element of a retaliatory harassment claim.  *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997) ("[A] plaintiff in an ADA retaliation case need not establish that he is a 'qualified individual with a disability.'"); ECF 19 at 6.

complaint and matters of public record."); ECF 16, Ex. A. In these emails, she complains that a mental health provider's "services are/were lacking" and its therapists behaved unethically, and also notes the Section 504 rights of "students displaying at risk behaviors." ECF 16, Ex. A. O'Shea's further alleges that her complaints to the School Board and OCR were protected activities, and that she would not have been suspended or escorted from the building but for these complaints. ECF 16 ¶¶ 122–23. At this stage of the proceedings, O'Shea has sufficiently alleged that she "acted under a reasonable belief that the conduct of which [she] complained constituted a violation of the relevant statute." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 187–88 (2005).

### C. Constructive Discharge

To establish causation, a retaliation plaintiff must allege:

> (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof the plaintiff must show that from the evidence gleaned from the record as a whole the trier of the fact should infer causation.

*Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted) (internal quotation marks omitted). The Court previously dismissed O'Shea's claim for constructive discharge because the time periods between her OCR complaints and her resignation were not "unusually suggestive," and O'Shea had not sufficiently alleged a pattern of antagonism in the intervening period. ECF 14 at 17–18. In her Second Amended Complaint, O'Shea adds new allegations regarding verbal and email attacks by Superintendent Hacker in March 2012, and specifies that additional antagonistic conduct repeated until she resigned.[6] ECF

---

[6] Specifically, O'Shea alleges that until she resigned she experienced: "ongoing complaints from other administrators" that created an "intimidating work environment" (ECF 16 ¶ 37); monthly "OCR meetings" with school staff in which a high school principal made public statements about O'Shea's OCR complaints (*id.* ¶¶ 55–57); continuous monitoring of her daily job duties (*id.* ¶ 111); and blame from Superintendent Hacker for the performance of duties that she had transferred from O'Shea to other personnel (*id.* ¶¶ 102, 104).

16 ¶ 127. These allegations are sufficient to establish a pattern of antagonism between her December 2011 and April 2012 OCR complaints and her resignation that supports an inference of causation.[7]

### D. Individual Liability

Defendants argue that the Court should dismiss all claims against Superintendent Hacker in her individual capacity. ECF 17-1 at 17–18. O'Shea clearly sues Superintendent Hacker "in her capacity as Superintendent," ECF 16 ¶¶ 17, 19, and alleges conduct she took by virtue of her status as Superintendent. "Suits against state officials in their official capacity" are "treated as suits against the" government entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Therefore Superintendent Hacker is dismissed as a party.

### E. Damages

Defendants also ask the Court to rule that compensatory damages are not available for ADA retaliation claims.[8] ECF 17-1 at 19–20. As Defendants have pointed out, "Plaintiff did not delineate which damages would address which causes of action" in her Second Amended Complaint, and compensatory damages are available for at least some of her claims.[9] *Id.* The Court therefore will not dismiss her damages claims at this time.

---

[7] Defendants have also argued that O'Shea has failed to allege its stated reason for the December 2011 suspension was pretext. ECF 17-1 at 15–16. Pretext, however, is an evidentiary standard, not a pleading requirement. *Cf. Hibbard v. Penn-Trafford Sch. Dist.*, No. 13-622, 2014 WL 640253, at *5 n.7 (W.D. Pa. Feb. 19, 2014) ("Because a Rule 12(b)(6) motion to dismiss merely tests the legal sufficiency of the complaint, it is necessary only to determine whether plaintiff's complaint sets forth a *prima facie* case of age discrimination pursuant to the ADEA, as evidentiary burdens are inapposite at the pleadings stage.").

[8] O'Shea does not include a request for punitive damages in the Second Amended Complaint. The Court therefore need not decide whether they may be awarded against the School District.

[9] For instance, O'Shea would be entitled to remedies available under Title VI of the Civil Rights Act for retaliation in response to complaints regarding the School District's compliance with ADA Title II, which can include compensatory damages. 42 U.S.C. § 12203(c) (2012); *see Alexander v. Sandoval*, 532 U.S. 275, 282–83 (2001) (compensatory damages available for intentional discrimination under Title VI); *Datto*, 664 F. Supp. at 489 (explaining 42 U.S.C. § 12203 incorporates the remedies of Title VI, 42 U.S.C. §§ 2000e–5(f)–(k)).

**F.     Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss the Second Amended Complaint is GRANTED in part and DENIED in part.

An appropriate order follows.

O:\CIVIL 13\13-6305 o'shea v. interboro sd\13cv6305 Memo Granting in Part Denying in Part MTD.docx